NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0631n.06

No. 14-1029

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 14, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| J.D.D., INC. and JAMES GLADSTONE, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CHARTER TOWNSHIP OF CLINTON, | ) | COURT FOR THE EASTERN |
| MICHIGAN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: GUY, KETHLEDGE, and STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge. James Gladstone owns a bar in the Charter Township of Clinton, Michigan. He sued the Township under 42 U.S.C. § 1983, claiming that its police officers singled out his bar for increased patrols and disproportionate reporting of liquor-license infractions. The district court granted the Township's motion for summary judgment on each of Gladstone's claims. We affirm.

I.

Gladstone has owned Cracker Jacks Bar and Grill since 1996. "Sometime in the 1990's," Gary Franey, a now-retired Township police lieutenant, allegedly told Gladstone that he would make Gladstone "pay" for dating Franey's girlfriend. According to Gladstone, in 1999, Township police began "a relentless pattern of patrolling the parking lot" that Cracker Jacks shared with a large thrift store. Gladstone admitted, however, that the increased patrols began

shortly after a 1999 stabbing that took place at Cracker Jacks. From 1999 to 2011, there were 182 police incidents at Cracker Jacks, and Township police reported Cracker Jacks for 12 liquor-license violations to the Michigan Liquor Control Commission. The Commission issued sanctions against Cracker Jacks for 10 of those reported violations. Gladstone says he "complained about this harassment to various Clinton Township officials and police commanders, but they did nothing to stop the harassment."

Gladstone alleges that the police harassment came to a head in January 2009, when, based on a tip from a confidential informant, Township police named him as a suspect in an investigative report concerning cocaine sales at Cracker Jacks. During a later undercover operation, Township police made three controlled purchases of cocaine from an on-duty bartender at Cracker Jacks. The bartender was arrested and pled guilty; the police never arrested or charged Gladstone.

Gladstone thereafter brought this lawsuit against the Township, claiming that its police had selectively enforced laws against Cracker Jacks and Gladstone in violation of the Equal Protection and Due Process Clauses. The district court granted the Township's motion for summary judgment.

This appeal followed.

## II.

We review de novo a district court's grant of summary judgment. *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 584 (6th Cir. 2009). Gladstone challenges the district court's holding that his constitutional claims were time-barred, and further argues that genuine issues of material fact precluded summary judgment. But we can affirm on any basis supported by the record. *EA Mgmt. v. JP Morgan Chase Bank, N.A.,* 655 F.3d 573, 575 (6th Cir. 2011).

Here, Gladstone sued only the Township. Under § 1983, the Township is liable only if it had a "policy or custom" that resulted in the constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978).

A policy must be "promulgated by the official vested with final policymaking authority for the municipality." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005). Here, Gladstone contends that retired Township Police Lieutenant Gary Franey "directed" Township police officers to target Cracker Jacks because Gladstone had dated Franey's girlfriend "[s]ometime in the 1990's." But Franey was not the chief of police, and Gladstone offered no evidence that Franey otherwise had final policymaking authority. Moreover, there is no evidence that Franey ever directed Township police officers to target Cracker Jacks. Thus, Gladstone failed to show any evidence that the Township had a policy of targeting him. *Id.* at 814.

Gladstone fares no better in establishing a "custom" of selective targeting on the Township's part. Gladstone must establish that a Township policymaker tacitly approved of a clear and persistent pattern of unconstitutional conduct, "such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction." *Doe v. Claiborne Cnty., Tenn. by & through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996). That is, a plaintiff must show a "conscious decision not to act," not merely "a collection of sloppy, or even reckless, oversights." *Id.* Gladstone contends that he complained to Township City Council members and "police commanders" on numerous occasions. He further contends that the Township's council members' and police commanders' failure to act on those complaints shows that the Township acquiesced to a custom of selectively targeting him and his bar. But all Gladstone offers in support of these contentions is his own unsupported

conjecture—which is not enough to survive summary judgment. *See Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008). Gladstone failed to depose a single member of the City Council; and his deposition of Township Chief of Police Fred Posavetz did not reveal any evidence showing that Posavetz had been aware of Gladstone's complaints, let alone deliberately indifferent to them. Gladstone therefore has not made the showing that *Monell* requires for him to proceed with his claim against the Township.

The district court's judgment is affirmed.